UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-209-GWU

DAVID MASON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, David Mason, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments due to coronary artery disease and being status post a myocardial infarction. (Tr. 22). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Mason retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 24-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked whether the plaintiff, a 38-year-old man who attended school through the tenth grade in Special Education classes and had a work history as a fork lift operator, laundry worker, and meat packer, could perform any jobs if he were capable of "medium" level exertion and also had the following non-exertional restrictions.[1]  He: (1) could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (2) needed to avoid all exposure to dust, fumes, smoke, chemicals, noxious gases, and poor ventilation; (3) could do no work

---

[1] "Medium" level exertion is defined as lifting up to 50 pounds occasionally and 25 pounds frequently. Social Security Ruling (SSR) 83-10, p. 6.

involving hazardous or dangerous machinery, or in a hot environment; (4) would be restricted to work requiring simple, one- and two-step instructions that were non-detailed, in an environment with only casual or limited contact with the public and coworkers and infrequent interaction with supervisors; (5) would have a "limited but satisfactory" ability to deal with work stresses and maintain attention and concentration; and (6) could not be required to read or write. (Tr. 726-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 727).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. From a procedural standpoint, although the plaintiff alleged that he became unable to work on July 1, 2003 (e.g., Tr. 425), a prior application for benefits had been denied in an ALJ decision dated December 27, 2005 (Tr. 387-95), which became the final decision of the Commissioner when the Appeals Council denied review. The ALJ noted that the findings of fact in the prior decision were controlling in subsequent, unadjudicated periods, but found that there was new and material evidence which showed that the plaintiff's condition had deteriorated. (Tr. 19).

Mr. Mason alleged disability in his current application due to lower back pain, with numbness in his hip and legs, cardiovascular problems, lung problems, and

nervousness. (Tr. 425). He testified that he had stopped working due to lower back, left hip, and leg pain which made it difficult for him to operate a fork lift, and, in addition, because of "real bad" nerves. (Tr. 719, 722). His heart problems had developed after he stopped working, and he still had frequent chest pain for which he took medication. (Tr. 720). Educationally, Mr. Mason testified that although he had attended school through the tenth grade in Special Education classes, he could not read or write. (Tr. 717-18). His wife would pay the bills, because he did not know how to use a checkbook, and could not spell, and he had always needed to take someone with him to fill out job applications. (Tr. 724-5). At his job driving a fork lift, he was not required to read. (Tr. 723). His boss would tell him to speed up because he would fall behind, but he was not able to. (Tr. 722-3).

Many of the medical records in the transcript concern the plaintiff's cardiac problems, including a hospitalization in April, 2005 during which he was found to have evidence of an acute anterior myocardial infarction and 90 percent stenosis of the left anterior descending artery. A stent was placed in the artery with "excellent" results. (Tr. 324). Although Mr. Mason did complain of continuing chest pain, a follow-up cardiac catheterization in November, 2005 showed no significant stenosis and normal ventricular function. (Tr. 502-3). His cardiologist stated that Mr. Mason had an excellent prognosis if he discontinued smoking. (Id.). The plaintiff does not raise any issue regarding cardiac-related limitations on appeal.

The plaintiff's issues on appeal concern two issues which the ALJ did not find to be "severe" impairments: (1) his alleged mild mental retardation, and (2) treating physician restrictions due to lumbar radiculopathy.

First, the plaintiff alleges that his condition meets the requirements of the Commissioner's Listing of Impairment (LOI) 12.05C, captioned "Mental Retardation."  LOI 12.05C provides, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt.  P, App. 1, § 12.05 (2009).

The plaintiff points out that school records show IQ scores below 70 prior to age 22, including an IQ of 67 in 1977, 55 in 1980, 63 in 1981 and a verbal IQ score of 69 in 1988.  (Tr. 147-56, 487-90).  However, he also received an IQ of 72 in 1984, and the 1988 testing showed a performance IQ of 96 and a full scale IQ of 81.  (Tr. 151, 153).  In connection with his current application for benefits, Mr. Mason underwent a psychological evaluation by Dr. Kenneth Starkey on July 7, 2005. Dr. Starkey had access to educational records including IQ scores.  (Tr. 345).

Dr. Starkey administered testing showing a verbal IQ of 67, a performance IQ of 64, and a full scale IQ score of 63. (Tr. 349). The psychologist stated, however, that the scores "likely" underestimated the plaintiff's true intellectual abilities "based on information provided by his wife regarding [his] overall adaptive behavior." (Id.). Dr. Starkey also administered an instrument assessing adaptive behavior, which placed the plaintiff in the borderline range of adaptive skills, with no clinically significant deficits. (Tr. 350-1). The psychologist indicated that this test was the best overall indicator of the plaintiff's adaptive functioning. (Tr. 351). He diagnosed borderline intellectual functioning, rather than mental retardation. (Tr. 352).

Although, as the plaintiff asserts, his IQ scores are low enough to meet LOI 12.05C if taken at face value, the Sixth Circuit has made it plain that showing deficits in adaptive functioning is a prerequisite of meeting the Listing. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2002). Dr. Starkey's conclusion that, based on both extrinsic evidence and objective testing, Mr. Mason's adaptive functioning was in the borderline range is uncontradicted.[2] Therefore, even assuming that the IQ scores were valid, the plaintiff still has not proven that he meets all the requirements of the Listing. Thus, the plaintiff's first argument is without merit.

---

[2] Dr. Starkey's conclusion in this regard was bolstered by the opinion of Psychiatrist Kevin Eggerman, who examined Mr. Mason in October, 2003, in connection with his first application for benefits. Dr. Eggerman did not conduct formal testing, but based on his clinical examination estimated that Mr. Mason's IQ was in the borderline range. (Tr. 265).

Mr. Mason's second argument on appeal is that the ALJ improperly rejected the restrictions of his treating family physician, Dr. Cheung Shin.  Dr. Shin submitted office notes reflecting treatment of the plaintiff between 2004 and 2007, and on February 27, 2007 completed a physical medical assessment form limiting his patient to lifting 10 pounds occasionally and 5 pounds frequently, standing no more than 45 minutes in an eight-hour day, sitting no more than two hours in an eight-hour day, with additional restrictions on pushing and pulling, as well as the environmental restrictions which were ultimately accepted by the ALJ and included in the hypothetical question.  (Tr. 661-2).  Dr. Shin cited "lumbar radiculopathy" as the basis for the restrictions.  (Id.).  Clearly, if the restrictions were accepted, the plaintiff would not be capable of full-time work.

It is well settled that if the opinion of a treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, it must be given controlling weight.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004), citing 20 C.F.R. § 404.1527(d)(2).  In circumstances where the treating source opinion is not given controlling weight, the ALJ is required to apply additional factors set out in § 404.1527 in determining what weight to give the opinion.  Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Circuit 2007).  Even where the opinion of the treating physician is not given controlling

weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

In the present case, the ALJ disposed of Dr. Shin's opinion by focusing on the diagnosis of lumbar radiculopathy. The ALJ stated that he found no diagnostic testing to support this finding, with Dr. Shin's treatment records showing negative straight leg raising tests. (Tr. 27). The ALJ also stated that Dr. Shin did not refer his patient to a specialist and treated his symptoms with medication. (Id.). The ALJ rejected the opinion of a one-time examining source, Dr. Gary Wortz, who had examined the plaintiff in March, 2006, and found no functional limitations (Tr. 26, 523-6), in favor of "state agency medical consultants who reviewed the evidence and concluded the claimant was capable of performing a range of medium exertion" (Tr. 27).

Although Dr. Shin's office notes are difficult to read, and do show negative straight leg raising and no deficits in knee or ankle reflexes, he also consistently indicates that the plaintiff had "severe lumbar psm tenderness." (Tr. 663-67A).[3]

Social Security Ruling 96-9p indicates that in some circumstances the opinion of non-examining reviewers may be entitled to greater weight than even a treating physician, but gives as an example circumstances in which the reviewers

---

[3] In this context, it appears that "psm" stands for "paraspinal musculature."

have had access to the entire case record.  Such was not the case here.  The state agency reviewers completed their reports in April and July, 2006  (Tr. 597-604, 620-26), prior to the receipt of Dr. Shin's opinion and his more recent office notes.  Furthermore, as the plaintiff points out, there is no indication that the first reviewer had any medical qualifications.  (Tr. 604).  Therefore, under the circumstances of this case, reliance on the non-examiners was inappropriate.

Dr. Shin's opinion as a treating source regarding restrictions finds some support in his consistent findings of severe lumbar tenderness, and regular prescriptions for Lorcet, a narcotic medication for the treatment of moderate to moderately severe pain, factors not mentioned by the ALJ.  See Physician's Desk Reference, (54th ed. 2000), p. 3121.  "[F]ailure to consider the record as a whole undermines the Secretary's conclusion . . . ."  Hurst v. Secretary of Health and Human Services, 753 F.2d 517, 519 (6th Cir. 1985).  The ALJ also gave no explicit consideration of the factors set out in § 404.1527(d)(2), which is required when the opinion of a treating physician is rejected.  Some of the factors, such as the length and frequency of the treatment relationship and the consistency of the physician's conclusions, favor the plaintiff.

The plaintiff has also submitted evidence to the Appeals Council which does not form a part of this court's substantial evidence review, but can be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 20th day of April, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**